This docket is the case of the people of the state of Illinois v. Charles S. Cook. We have Alan Andrews for the appellant, and we have Jennifer Hampton for the appellee. And when you are settled and ready, you may proceed. May it please the Court. My name is Alan Andrews. I'm from the Office of the State Appellate Defender in Springfield. I'm here to represent Mr. Cook. In the time allotted, I'm going to discuss simply one part of the second issue. And that issue, if you recall, is where Mr. Cook's trial attorney succeeded in convincing the trial judge that evidence that Mr. Cook had smoked meth in the car before the elected manufacturing of the methamphetamine was inadmissible. Now, unfortunately, the trial court subsequently ruled that Mr. Cook's attorney had opened the door to this evidence by asking the state's main witness, his former co-defendant, Marla Taylor, whether or not she had smoked methamphetamine in the car. And the evidence subsequently came in that she had and that Mr. Cook also had. Now, if the state is correct that counsel opened the door to the evidence that Mr. Cook had smoked methamphetamine in the car that night, then counsel was clearly in effect if he denied Mr. Cook his right to the effective assistance of counsel. There was definitely substandard performance here where trial counsel had convinced the judge that this evidence that Mr. Smith had smoked methamphetamine in the car before the manufacturing was irrelevant. Now, that decision whether or not this court as individual judges would agree with it or not was well within the trial court's discretion and it was not an abuse of discretion to rule that the evidence that Mr. Cook smoked methamphetamine was not relevant to the question of whether he manufactured it. So, it was definitely, therefore, substandard performance to violate the court's ruling, to violate the ruling he got in his own motion in limine. Now, the main point I'd like to make about this is the state goes to great lengths to argue in its brief that the evidence that Mr. Cook actually smoked methamphetamine was actually relevant and should have been admitted to begin with. But that doesn't matter to the ineffective assistance of counsel claim because that is predicated on the fact that the trial judge did not abuse his discretion in ruling that the evidence wasn't admissible and, therefore, it was only the misstep by Mr. Cook's counsel that allowed this evidence to come in. Had counsel not asked that question of Ms. Taylor, this evidence never would have come in, the evidence that Mr. Cook had smoked meth. So, it doesn't matter whether or not the state can make an argument here that some other judge perhaps might have ruled that the meth-smoking evidence was, in fact, relevant. This judge did not abuse his discretion in ruling that it was not. The evidence wouldn't have come in but for counsel's misstep. And it was definitely prejudicial to Mr. Cook's case. You know, nobody ever testified that they saw Mr. Cook manufacturing methamphetamine. One of the deputies testified that they found nothing in the lab, the alleged lab, that they could link to Mr. Cook. Marla Taylor did not testify that she ever saw Mr. Cook manufacturing meth. She testified that she left him in her grandmother's trailer and he was asleep. She went outside. Her boyfriend, the other defendant, came out with her. And when she returned, Mr. Smith was sitting in this trailer surrounded by smoke and haze. All she said he was doing was sitting. She never testified he'd done anything to manufacture methamphetamine. And, in fact, the prejudice is compounded because, you know, the evidence in this case really points to Marla Taylor. The state's main witness. She's the one who possessed the methamphetamine when they were arrested. She's the one who possessed the scales like a meth dealer would use when they were arrested. She's the one who had purchased 200 doses of ephedrine in the previous two weeks before this. She's the one who had control of the trailer because it was her grandmother's and she was allowed to go there whenever she wanted.  She'd been there earlier that day and that's when she could have dropped off all the stuff that she used to make the methamphetamine. Now, so, again, that's the only issue I really wanted to discuss in the brief time that was allotted. And I would like to reemphasize the state's arguments that this evidence was admissible and, therefore, counsel's performance was not substandard is simply wrong. Counsel had excluded this incredibly damaging testimony that Mr. Cook had smoked methamphetamine, evidence that the state stated that they were going to use to show that he intended to manufacture methamphetamine, and it doesn't matter whether it was admissible or not because it wasn't coming in until counsel made this mistake. If there are no questions, I thank you very much. Thank you. Ms. Tanton, do we have any support? Counsel? With regard to the claim of ineffective assistance of counsel, this evidence lacked a prejudicial effect or unfairly prejudicial effect for several reasons. First, Taylor testified that she wasn't actually sure whether this drug was methamphetamine. She only presumed that it was. She didn't know for sure. She carefully avoided stating that it actually was meth. Also, the state, in a 30-minute long closing argument, made one very vague and fleeting reference to this evidence in the context of describing the overall continuing transaction of how these three people arrived at the trailer and just said that on the way to the trailer, they, not naming defendants specifically, smoked a drug. And then, finally, the jury was given the instruction that it was only to consider the other crime's evidence on the issues of intent, knowledge, motive, and design, and the juries presumed to have followed those instructions. So, therefore, any prejudicial effect was limited. And I'd also point to the transcript of the post-trial motion hearing at which this argument was made in the circuit court. Trial counsel was questioned about these events and testified that he made a trial strategy decision to impeach Marla Taylor. She testified that she didn't know anything about the manufacture of methamphetamine, that she told the police that she didn't know anything about methamphetamine at all, and defense counsel, seeking to make out the state's key witness to be a liar, proceeded to impeach her by asking, well, wasn't that pipe smoked and weren't you smoking that pipe? How does that help the defendant if, obviously, then his own use is going to come in? The trial counsel stated that he made the decision that discrediting her as a witness was a greater priority than not mentioning it. I mean, after all... Knowing that his own client's use in the car would come in as well. I don't think he said in the post-trial motion hearing that he believed that that would happen. He stated that he believed... He didn't think that would open the door? He said that he didn't believe that that would happen, actually. He seemed surprised that it did. But the circuit court agreed that it was a reasonable trial strategy to do whatever counsel could to discredit Taylor as a witness, given that she was the only witness for the state who testified that she saw Cook in the trailer filled with methamphetamine fumes, saw him pouring water into a hydrochloric acid generator inside the trash can as the three evacuated the trailer. As to whether the door was opened to this evidence, I'd point the court to the people's answer brief. Oh, I also want to note that a defendant has tried to create a reasonable doubt by theorizing that it was Taylor who was the ringleader of this enterprise. And I want to note that she testified that the meth that was found on her person when the car was pulled over and the scales were actually... The meth was given to her by one of the men when the police pulled the car over, and the scales she grabbed from between the front seats of the car, she did not testify that they were hers and that she was the original possessor of those items. Does the court have further questions? I don't think so. I respect your request. Thank you, Ms. Gampin. Do you have further argument? As far as the trial counsel strategy, you know, it's embarrassing, as I well know, to be accused of ineffective assistance of counsel. And I think his statements at this hearing were kind of a post hoc rationalization. If you look at what happened at the time, he argued he had not violated the motion in limine. He argued in his own post trial motion that he had not violated the motion in limine. This idea that it was some sort of strategy came up when he was called in to testify later, and I think it's clear that it was not a strategy. In any event, another way to tell it wasn't a strategy is you look at the record, and simply what happened here is trial counsel misunderstood the trial court's ruling. Trial counsel thought that the judge had ruled that only Mr. Cook's meth use had been excluded. The trial judge explained to Mr. Cook's attorney that he meant that no use of any methamphetamine in the car could be brought in. So it wasn't a strategy to suddenly abandon the motion in limine. What happened was he misunderstood the court's ruling and violated the motion in limine. As to the idea that there was no prejudice because Ms. Taylor wasn't sure whether or not it was methamphetamine, well, you know, obviously it was some sort of drug, and the inference is that it's meth. And whether it was meth or some other sort of drug that showed that Mr. Cook is a drug dealer, that's just as prejudicial. So unless there are any other questions, I thank you for your time and ask you to grant Mr. Cook a new trial. Thank you. Thank you. Thank you both for your briefs and arguments.